1    James C. Krause, Esq. (SBN 066478)
     Vincent D. Slavens, Esq. (SBN 217132)

2    KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP.
     625 Broadway, Suite 635

3    San Diego, CA 92101
     Tel: 619-232-0331

4    Fax: 619-232-4019

5    Donald J. Enright
     Elizabeth K. Tripodi

6    FINKELSTEIN THOMPSON LLP
     1050 30th Street N.W.

7    Washington, DC 20007
     (202) 337-8000

8

9

10                 **UNITED STATES DISTRICT COURT**

11                 **SOUTHERN DISTRICT OF CALIFORNIA**

<table>
<tr><td>
12<br>
13<br>
14<br>
15<br>
16<br>
17<br>
18<br>
19<br>
20<br>
21<br>
22<br>
23<br>
24
</td>
<td>

Eamen Hameed, Derivatively and on behalf of WIRELESS FACILITIES, INC.

         Plaintiff,

   vs.

MASSIH TAYEBI, MASOOD TAYEBI, THOMAS MUNRO, SCOTT ANDERSON, BANDELL CARANO, WILLIAM A. HOGLUND, ANDREW M. LEITCH, DAVID LEE, SCOT JARVIS, SCOTT FOX, ERIC DEMARCO, JAMES EDWARDS, DEANNA H. LUND, TERRY ASHWILL, and WM. BRADFORD WELLER

         Defendants,

     -and-

WIRELESS FACILITIES, INC., a Delaware Corporation,

         Nominal Defendant

</td>
<td>

Case No. **07 CV 0680 BTM (RBB)**

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, CORPORATE WASTE, GROSS MISMANAGEMENT, CONSTRUCTIVE FRAUD, UNJUST ENRICHMENT, AND FOR ACCOUNTING**

<u>DEMAND FOR JURY TRIAL</u>

</td></tr>
</table>

25                    **NATURE OF THE ACTION**

26        1.      This is a shareholder derivative action brought by a shareholder of Wireless

27   Facilities, Inc. ("WFI" or the "Company) on behalf of the Company against its Board of

28   Directors and certain senior executives (collectively, "defendants").  This action seeks to

FILED

APR 1 3 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY              DEPUTY

remedy defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. These violations arise out of a scheme and wrongful course of business whereby defendants allowed senior WFI insiders to divert millions of dollars of corporate assets to themselves and other employees via the manipulation of grant dates associated with millions of stock options granted to WFI insiders. Each of the defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the illicitly obtained incentive compensation and proceeds diverted to corporate employees from 2000 to 2006.

2.      WFI is an independent provider of systems engineering, network services and technical outsourcing for the wireless carriers, enterprise customers and government agencies. The Company is headquartered in San Diego, California.

3.      Based on information and belief, between 2000 and 2006, defendants also caused WFI to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy statements filed with the SEC which stated that the options granted by WFI had an exercise price equal to "the fair market value on the day prior to the date of grant based on the closing price of the Common Stock as quoted on the NASDAQ National Market."

4.      Based on information and belief, in fact, defendants were aware that the practices employed by the Board allowed the stock option grants to be backdated to dates when the Company's shares were trading at or near the lowest price for that relevant period or prior to a sharp rise in the common stock's price.

5.      Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in the stock option backdating scheme, defendants: (i) caused WFI to issue false statements; (ii) divert millions of dollars of corporate assets to

1   senior WFI executives; (iii) subjected WFI to potential liability from regulators including the

2   SEC and IRS.

3       6.    Defendants' gross mismanagement and malfeasance has exposed WFI and its

4   senior executives to criminal and civil liability for issuing false and misleading financial

5   statements. Specifically, based on information and belief, defendants caused or allowed WFI

6   to issue statements that failed to disclose or misstated the following: (i) that the Company had

7   problems with its internal controls that prevented it from issuing accurate financial reports and

8   projections; (ii) that because of improperly recorded stock-based compensation expenses, the

9   Company's financial results violated Generally Accepted Accounting Principles ("GAAP");

10   and (iii) that the Company's public disclosures presented an inflated view of WFI's earnings

11   and earnings per share.

12       7.    Between 2000 and 2006, defendants repeated in each Proxy Statement that the

13   exercise price of the option was equal to "the fair market value on the day prior to the date of

14   grant based on the closing price of the Common Stock as quoted on the NASDAQ National

15   Market." Based on information and belief, however, defendants concealed that the stock

16   option grants were repeatedly and consciously backdated to ensure that the strike price

17   associated with the option grants was at or near the lowest trading price for the fiscal period.

18   Due to defendants' breach of their fiduciary duty in the administration of the stock option

19   plans, Plaintiff seeks to have the directors' and officers' plans voided and gains from those

20   plans returned to the Company. In the alternative, Plaintiff seeks to have all of the

21   unexercised options granted to defendants between 2000 and 2006 cancelled, and the financial

22   gains obtained via the exercise of such options returned to the Company and to have

23   defendants revise the Company's financial statements to reflect the truth concerning these

24   option grants.

25                     **JURISDICTION AND VENUE**

26       8.    The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C.

27   §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of

28   control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In

1   connection with the acts, conduct and other wrongs complained of herein, defendants, directly

2   or indirectly, used the means and instrumentalities of interstate commerce, the United States

3   mail and the facilities of NASDAQ, a national securities market.

4       9.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act,

5   15 U.S.C. §78aa, as well as 28 U.S.C. §1331.  This Court also has supplemental jurisdiction

6   over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

7       10.    This action is not a collusive one to confer jurisdiction on a court of the United

8   States which it would not otherwise have.

9       11.    Venue is proper in this district pursuance to §27 of the Exchange Act, 15

10  U.S.C. §78aa, as well as 28 U.S.C. §1391(b).  One or more of the defendants reside within

11  this judicial district, and a substantial part of the events or omissions giving rise to the claims

12  described herein occurred within this Judicial District.  Nominal Defendant WFI maintains its

13  corporate headquarters in this District.

14  **PARTIES**

15  **<u>Plaintiff</u>**

16      12.    Plaintiff Eamen Hameed is and at all relevant times hereto, was a shareholder

17  of nominal defendant WFI.

18  **<u>Defendants</u>**

19      13.    Defendant Massih Tayebi ("Massih") co-founded Wireless Facilities, Inc. in

20  1994 and served as Chairman, Chief Executive Officer and a director of the Company from its

21  inception until 2000.  Because of Massih's position, he knew the adverse non-public

22  information about the business of WFI, as well as its finances, markets and present and future

23  business prospects, via access to internal corporate documents, conversations and connections

24  with other corporate officers and employees, attendance at management and/or Board

25  meetings and committees thereof and via reports and other information provided to him in

26  connection therewith.  During the relevant period, Massih participated in the issuance of false

27  and/or misleading statements, including the preparation of the false and/or misleading press

28  releases and SEC filings.

14.     Defendant Masood Tayebi ("Masood") co-founded Wireless Facilities, Inc. in 1994 and has served as President and Chief Operating Officer of the Company from its inception through September 2000.  From September 2000 through April 1, 2004, Masood served as CEO of WFI.  Masood served as a director from 1994 until April 2002 when assumed the position of Chairman of the Board.  Because of Masood's position, he knew the adverse non-public information about the business of WFI, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the relevant period, Masood participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

15.     Defendant Scott Anderson ("Anderson") has served as a director of the Company since February 1997.  Because of Anderson's position, he knew the adverse non-public information about the business of WFI, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the relevant period, Anderson participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

16.     Defendant Bandel Carano ("Carano") served as a director of the Company from August 1998 to June 2001.  He re-joined the Board of Directors in October 2001 as a director.   Because of Carano's position, he knew the adverse non-public information about the business of WFI, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection

1    therewith.  During the relevant period, Carano participated in the issuance of false and/or

2    misleading statements, including the preparation of the false and/or misleading press releases

3    and SEC filings.

4            17.    Defendant Scot Jarvis ("Jarvis") has served as a director of the Company since

5    February 1997.  Because of Jarvis's position, he knew the adverse non-public information

6    about the business of WFI, as well as its finances, markets and present and future business

7    prospects, via access to internal corporate documents, conversations and connections with

8    other corporate officers and employees, attendance at management and/or Board meetings and

9    committees thereof and via reports and other information provided to him in connection

10   therewith.  During the relevant period, Jarvis participated in the issuance of false and/or

11   misleading statements, including the preparation of the false and/or misleading press releases

12   and SEC filings.

13           18.    Defendant Thomas Munro ("Munro") served as Chief Financial Officer from

14   July 1997 to September 2000.  From September 2000 until sometime in 2002 Munro served

15   as the Company President.  Because of Munro's position, he knew the adverse non-public

16   information about the business of WFI, as well as its finances, markets and present and future

17   business prospects, via access to internal corporate documents, conversations and connections

18   with other corporate officers and employees, attendance at management and/or Board

19   meetings and committees thereof and via reports and other information provided to him in

20   connection therewith.  During the relevant period, Munro participated in the issuance of false

21   and/or misleading statements, including the preparation of the false and/or misleading press

22   releases and SEC filings.

23           19.    Defendant Scott Fox ("Fox") began serving WFI in May 1999 as the President

24   of Network Management and Operations.  His tenure with the Company ended in 2002.

25   Because of Fox's position, he knew the adverse non-public information about the business of

26   WFI, as well as its finances, markets and present and future business prospects, via access to

27   internal corporate documents, conversations and connections with other corporate officers and

28   employees, attendance at management and/or Board meetings and committees thereof and via

reports and other information provided to him in connection therewith. During the relevant period, Fox participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

20. Defendant Eric M. DeMarco ("DeMarco") joined WFI in November 2003 as President and Chief Operating Officer. DeMarco was appointed a Director and assumed the role of Chief Executive Officer effective April 1, 2004. Because of DeMarco's position, he knew the adverse non-public information about the business of WFI, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, DeMarco participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

21. Defendant William A. Hoglund ("Hoglund") has served as a Director of WFI since February 2001. Because of Hoglund's position, he knew the adverse non-public information about the business of WFI, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Hoglund participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

22. Defendant Andrew M. Leitch ("Leitch") has been a Director of WFI since April 2005. Because of Leitch's position, he knew the adverse non-public information about the business of WFI, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof and via reports and other information provided to him in connection

1  therewith.  During the relevant period, Leitch participated in the issuance of false and/or

2  misleading statements, including the preparation of the false and/or misleading press releases

3  and SEC filings.

4       23.    Defendant David Lee ("Lee") began serving as a Director of the Company in

5  June 2001.  Because of Lee's position, he knew the adverse non-public information about the

6  business of WFI, as well as its finances, markets and present and future business prospects,

7  via access to internal corporate documents, conversations and connections with other

8  corporate officers and employees, attendance at management and/or Board meetings and

9  committees thereof and via reports and other information provided to him in connection

10  therewith.  During the relevant period, Lee participated in the issuance of false and/or

11  misleading statements, including the preparation of the false and/or misleading press releases

12  and SEC filings.

13       24.    Defendant James R. Edwards ("Edwards") has been the Senior Vice President,

14  General Counsel and Secretary since April 2004.  Because of Edwards' position, he knew the

15  adverse non-public information about the business of WFI, as well as its finances, markets

16  and present and future business prospects, via access to internal corporate documents,

17  conversations and connections with other corporate officers and employees, attendance at

18  management and/or Board meetings and committees thereof and via reports and other

19  information provided to him in connection therewith.  During the relevant period, Edwards

20  participated in the issuance of false and/or misleading statements, including the preparation of

21  the false and/or misleading press releases and SEC filings.

22       25.    Defendant Deanna H. Lund ("Lund") has been the Senior Vice President and

23  Chief Financial Officer of WFI since April 2004.  Because of Lund's position, he knew the

24  adverse non-public information about the business of WFI, as well as its finances, markets

25  and present and future business prospects, via access to internal corporate documents,

26  conversations and connections with other corporate officers and employees, attendance at

27  management and/or Board meetings and committees thereof and via reports and other

28  information provided to him in connection therewith.  During the relevant period, Lund

1  participated in the issuance of false and/or misleading statements, including the preparation of

2  the false and/or misleading press releases and SEC filings.

3      26.    Defendant William A. Owens ("Owens") has served as a Director of the

4  Company since February 2003. Because of Owens' position, he knew the adverse non-public

5  information about the business of WFI, as well as its finances, markets and present and future

6  business prospects, via access to internal corporate documents, conversations and connections

7  with other corporate officers and employees, attendance at management and/or Board

8  meetings and committees thereof and via reports and other information provided to him in

9  connection therewith. During the relevant period, Owens participated in the issuance of false

10  and/or misleading statements, including the preparation of the false and/or misleading press

11  releases and SEC filings.

12      27.    Defendant Terry Ashwill ("Ashwill") joined WFI in September of 2000 as

13  Chief Financial Officer and served as Executive Vice President and Chief Financial Officer

14  beginning in March 2001. Because of Ashwill's position, he knew the adverse non-public

15  information about the business of WFI, as well as its finances, markets and present and future

16  business prospects, via access to internal corporate documents, conversations and connections

17  with other corporate officers and employees, attendance at management and/or Board

18  meetings and committees thereof and via reports and other information provided to him in

19  connection therewith. During the relevant period, Ashwill participated in the issuance of false

20  and/or misleading statements, including the preparation of the false and/or misleading press

21  releases and SEC filings.

22      28.    Defendant Wm. Bradford Weller ("Weller") joined WFI in Septebmer 1999 as

23  Vice President of Legal Affairs and General Counsel and began serving as Secretary of the

24  Company in September 2000. Because of Weller's position, he knew the adverse non-public

25  information about the business of WFI, as well as its finances, markets and present and future

26  business prospects, via access to internal corporate documents, conversations and connections

27  with other corporate officers and employees, attendance at management and/or Board

28  meetings and committees thereof and via reports and other information provided to him in

connection therewith.  During the relevant period, Weller participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

## DEFENDANTS' DUTIES

29.     Each officer and director of WFI named herein owed the Company and WFI shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of property and assets.  The conduct of WFI's directors and officers complained of herein involves knowing intentional and culpable violations of their obligations as officers and directors of WFI.  Further, the misconduct of WFI's officers has been ratified by WFI's Board, which has failed to take any legal action on behalf of the Company against them.

30.     By reason of their positions as officers, directors and fiduciaries of WFI and because of their ability to control the business and corporate affairs of the Company, the defendants owed WFI and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage WFI in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of WFI and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  In addition, as officers and/or directors of a publicly held company, the defendants had a duty to refrain from utilizing their control over WFI to divert assets to themselves via improper and/or unlawful practices.  Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

31.     Because of their positions of control and authority as directors or officers of WFI, each of the defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein.  As to the Director defendants, these acts include: (i) agreement to and/or acquiescence in defendants' option backdating scheme; (ii) willingness to cause WFI to disseminate false Proxy Statements for 2000-2006, which Proxy Statements failed to disclose defendants' option backdating scheme and omitted the fact that executive officers

were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received.  Because of their positions with WFI, each of the defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to WFI shareholders and the financial markets, but failed to do so.

32.    Based on information and belief, between 2000 and 2006, defendants concealed that the stock option grants had been repeatedly and consciously backdated to ensure that the strike price associate with the option grants was at or near the lowest trading price for that fiscal period.  Due to defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company.  In the alternative, plaintiff seeks to have all of the unexercised options granted to defendants from as early as 1999 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have defendants revise the Company's financial statements to reflect the truth concerning these option grants.

33.    To discharge their duties, the directors of WFI were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of WFI.  By virtue of such duties, the officers and directors of WFI were required, among other things, to:

a.     manage, conduct, supervise and direct the business affairs of WFI in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of WFI);

b.     neither engaged in self-dealing nor knowingly permit any officer, director or employee of WFI to engage in self-dealing;

c.     neither violate nor knowingly permit any officer, director or employee of WFI to violate applicable laws, rules and regulations;

d.     remain informed as to the status of WFI's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such,

1  and upon receipt of notice or information of imprudent or unsound practices, to make a

2  reasonable inquiry in connection therewith, and to take steps to correct such conditions or

3  practices and make such disclosures as are necessary to comply with the U.S. federal

4  securities laws and their duty of candor to the Company's shareholders;

5         e.      prudently protect the Company's assets, including taking all necessary steps to

6  recover corporate assets (cash, stock options) improperly paid to Company executives and

7  directors together with the related costs (professional fees) proximately caused by the illegal

8  conduct described herein;

9         f.      establish and maintain systematic and accurate records and reports of the

10  business and affairs of WFI and procedures for reporting of the business and affairs to the

11  Board of Directors and to periodically investigate, or cause independent investigation to be

12  made of, said reports and records;

13         g.      maintain and implement an adequate, functioning system of internal legal,

14  financial and accounting controls, such that WFI's financial statements – including its

15  expenses, accounting for stock option grants and other financial information – would be

16  accurate and the actions of its directors would be in accordance with all applicable laws;

17         h.      exercise control and supervision over the public statements to the securities

18  markets and trading in WFI stock by the officers and employees of WFI; and

19         i.      supervise the preparation and filing of any financial reports or other

20  information required by law from WFI and to examine and evaluate any reports of

21  examinations, audits or other financial information concerning the financial affairs of WFI

22  and to make fully and accurate disclosure of all material facts concerning, *inter alia*, each of

23  the subjects and duties set forth above.

24        34.      Each defendant, by virtue of his or her position as a director and/or officer,

25  owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and

26  the exercise of due care and diligence in the management and administration of the affairs of

27  the Company, as well as in the use and preservation of its property and assets.  The conduct of

28  the defendants complaint of herein involves a knowing and culpable violation of their

obligations as directors and/or officers of WFI, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders, which defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the defendants who were officers and/or directors of the Company during the relevant period has been ratified by the Director defendants who comprised WFI's Board during the relevant period.

35.      Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the defendants from taking such illegal actions. As a result, WFI has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

a.      improvidently paid executive compensation;

b.      increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

c.      costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

d.      incurring possible IRS penalties for improperly recording compensation.

36.      These actions have irreparably damaged WFI's corporate image and goodwill. For at least the foreseeable future, WFI will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that WFI's ability to raise equity or capital or debt on favorable term in the future is now impaired.

### SUBSTANTIVE ALLEGATIONS

37.      A stock option granted to a director of officer of a corporation allows the directors or officers to purchase company stock at a specified price (the "exercise price") for a specified period of time.  Stock options are granted as part of compensation packages as a means to create incentives to boost profitability and stock value.

38.     When the director or officer exercises the option, he or she purchases the stock from the company at the exercise price, regardless of the stock's rise at the time the option is exercised.  The lower the exercise price, the more profit directors or officers can potentially make and the less money the company gets when the stock option is exercised.

39.     Based on information and belief, Plaintiff alleges that between 2000 and 2006, defendants used WFI to embark on a fraudulent scheme whereby the Company backdates stock option grants to the defendants and/or other directors or executives in order to provide the recipients with a more profitable exercise price.

40.     In public filings with the SEC, including but not limited to, the Company's definitive proxy statements, the Company represented that the exercise price of the stock option is equal to "the fair market value on the day prior to the date of grant based on the closing price of the Common Stock as quoted on the NASDAQ National Market."

41.     However, during the aforementioned period based on information and belief, defendants granted options but later set the exercise price to the fair market value of the stock on the day at which the stock price was particularly low and just before a significant rise in the stock price, not the actual date of the grant.

42.     Accordingly, the option grants ensured that the grantees were able to profit from increases in the Company stock prices with the benefit of hindsight.

43.     Therefore, defendants' representations that the exercise price of all stock options would be the closing price of the Company's common stock as reported by NASDAQ for the last market-trading day prior to the date of the grant were false.  As a result, defendants and/or other directors, executives and employees paid less, and the Company received less money for the stock when the options were exercised.

44.     In addition, based on information and belief, defendants caused the Company to falsify its financial statements by failing to properly record expenses related to these backdated option grants, which resulted in the overstatement of the Company's profits.  Specifically, when options are prices below the stock's last market-trading day prior to the date of the grant, the recipient receives an instant gain.  Under Generally Accepted

Accounting Principles ("GAAP"), this gain represents additional compensation and must be treated as an expense by the Company. The Company did not account for the amount by which the market price of its stock exceeded the exercise price of the options, thereby causing the Company to understate its expenses and overstate its net income.

45.     Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein, and by failing to prevent the defendants from taking such illegal actions. Such expenditures include, but are not limited to:

a.     improvidently paid executive compensation;

b.     increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

c.     profession costs associated with any SEC inquiry;

d.     costs incurred to carry out internal investigations, including legal fees paid to outside counsel;

e.     incurring possible IRS penalties for improperly reporting compensation.

46.     WFI's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weakness allowed dates of both grants and exercises to be manipulated and the Company's executives' compensation expenses to be materially understated. They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

47.     Specifically, based on information and belief, since at least 2000, defendants have caused WFI to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings. The precise nature and amount of this understatement of expenses and overstatement of net income is unreported at this time and will likely be revealed when WFI restates its financials for the period in question.

48.     In effect, between 2000 and 2006, defendants caused WFI shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial results.  These financial results misrepresented and omitted to disclose that the Company had problems with its internal controls that prevented it from issuing accurate financial reports.  Furthermore, because of improperly recorded stock-based compensation expenses the Company's publicly reported financial statements and results presented an inflated view of WFI's earnings and EPS.

49.     On March 12, 2007, WFI announced in a press release that it would delay its 2006 annual financial results after an internal review uncovered incorrect measurement dates for stock option grants issued between 1998 and 2003.  The Company further disclosed that "there is a strong likelihood" that it will restate its financial results issued during that period.  The release stated in part:

> On March 12, 2007, Wireless Facilities, Inc. (the "Company") announced that it has been conducting an internal review of its past practices for granting and pricing stock options.  The review is ongoing and as a result, the Company will delay filing its 10-K for fiscal 2006 until the review is complete.  The Company said this voluntary review was proactively initiated by its executive management team, with oversight from the Company's Board of Directors (the "Board") as well as outside legal counsel.  The Company has reviewed all stock option grants since 1998.  To date, the Company has identified grants issued between 1998 and 2003 that required further review because their historical measurement dates appear incorrect an are expected to result in adjustments affecting previously issued financial statements.  The Company has not determined the final aggregate amount of additional stock-based compensation expenses that may need to be recorded or the amount of such expenses that may need to be recorded in any specific prior period or in any future period.  Further, there can be no assurance that no other matters will arise during the review that will require additional adjustments to the Company's financial statements.  A conclusion of

1     whether a restatement is required of the Company's previously issued financial

2     statements will not be made until the internal review is complete.

3       50.     In effect, based on information and belief during the relevant period, the

4 defendants caused WFI's shares to trade at artificially inflated levels by issuing a series of

5 materially false and misleading statements regarding the Company's financial statements,

6 business and prospects. Specifically, defendants caused or allowed WFI to issue statements

7 that failed to disclose or misstated the following: (i) that the Company had problems with

8 internal controls that prevented it from issuing accurate financial reports and projections; (ii)

9 that because of improperly recorded stock-based compensation expenses the Company's

10 financial results violated GAAP; and (iii) that the Company's public disclosures presented an

11 inflated view of WFI's earnings and earnings per share.

12                **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

13       51.     Plaintiff brings this action derivatively in the right and for the benefit of WFI

14 to redress injuries suffered and to be suffered by WFI as a direct result of defendants'

15 violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive

16 fraud, gross mismanagement, corporate waste and unjust enrichment. This is not a collusive

17 action to confer jurisdiction on this Court which it would not otherwise have.

18       52.     Plaintiff will adequately and fairly represent the interests of WFI and its

19 shareholders in enforcing and prosecuting its rights.

20       53.     Plaintiff is an owner of WFI stock and was an owner of WFI stock during

21 times relevant to defendants' illegal and wrongful course of conduct alleged herein.

22       54.     Based upon the facts set forth through this Complaint, applicable law and the

23 longstanding rule that equity does not compel a useless and futile act, a pre-filing demand

24 upon the WFI Board of Directors to institute this action against the officers and members of

25 the WFI Board of Directors is excused as futile. A pre-filing demand would be a useless and

26 futile act because:

27       a.     Members of WFI's Board have demonstrated their unwillingness and/or

28 inability to act in compliance with their fiduciary obligations and/or sue themselves and/or

1    their fellow directors and allies in the top ranks of the corporation for the violations of law

2    complained of herein.  These are people they have developed professional relationships with,

3    who are their friends and with whom they have entangling financial alliances, interests and

4    dependencies, and therefore, they are not able to and will not vigorously prosecute any such

5    action.

6           b.     The WFI Board of Directors and senior management participated in, approved

7    and/or permitted the wrongs alleged herein to have occurred and participated in efforts to

8    conceal or disguise those wrongs from WFI's stockholders or recklessly and/or negligently

9    disregarded the wrongs complained of herein, and are therefore not disinterested parties.  As a

10   result of their access to and review of internal corporate documents, or conversations and

11   connections with other corporate officers, employees and directors and attendance at

12   management and/or Board meetings, each of the defendants knew the adverse non-public

13   information regarding the improper stock option grants and financial reporting.  Pursuant to

14   their specific duties as Board members, the director defendants are charged with the

15   management of the Company and the conducting of its business affairs.  Defendants breached

16   the fiduciary duties that they owed to WFI and its shareholders in that they failed to prevent

17   and correct the improper stock option granting and financial reporting.  Certain directors are

18   also dominated and controlled by other directors and cannot act independently of them.  Thus,

19   the WFI Board cannot exercise independent objective judgment in deciding whether to bring

20   this action or whether to vigorously prosecute this action because each of its members

21   participated personally in the wrongdoing or are dependent upon other defendants who did.

22          c.     The acts complained of constitute violations of the fiduciary duties owed by

23   WFI's officers and directors and these acts are incapable of ratification.

24          d.     The members of WFI's Board have benefited, and will continue to benefit,

25   from the wrongdoing herein alleged and have engaged in such conduct to preserve their

26   positions of control and the prerequisites derived thereof, and are incapable of exercising

27   independent objective judgment in deciding whether to bring this action.

28

e. Any suit by the current directors of WFI to remedy these wrongs would likely further expose the liability of defendants under the federal securities laws, which would result in additional civil and/or criminal actions being filed against one or more of the defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

f. WFI has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuit against itself or others who were responsible for that wrongful conduct to attempt to recover for WFI any part of the damages WFI suffered and will suffer thereby.

g. In order to properly prosecute this lawsuit, it would be necessary for the directors to sue themselves and the other defendants, requiring them to expose themselves and their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties. This, they will not do.

h. In order to bring this action for breaching their fiduciary duties, the members of the WFI would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their personal friends and family and with whom they have entangling financial alliances, interests and dependencies. This, they would not do.

55. Plaintiff has not made any demand on shareholders of WFI to institute this action since such demand would be a futile and useless act for the following reasons:

a. WFI is a publicly traded company with over 72 million shares outstanding and thousands of shareholders;

b. Making a demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

c. Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

56. Plaintiff has delivered a true copy of the complaint to the Company prior to the filing with this honorable Court.

1    **THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT**
2                    **ON WFI'S FINANCIAL STATEMENTS**

3        **The Fiscal 2000 Form 10-K**

4        57.    On or about March 29, 2001, the Company filed its fiscal 2000 Form 10-k with
5    the SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the
6    public. The fiscal 2000 Form 10-K included 2000 financial statements which were materially
7    false and misleading and presented in violation of GAAP, due to improper accounting for the
8    backdate stock options. As a result, WFI's compensation expense was understated and its net
9    earnings were overstated. This form was signed by Massih, Masood, Ashwill, Anderson,
10   Carano, Jarvis, and Hoglund.

11       **The Fiscal 2001 Form 10-K**

12       58.    On or about March 19, 2002, the Company filed its fiscal 2001 Form 10-k with
13   the SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the
14   public. The fiscal 2001 Form 10-K included 2001 financial statements which were materially
15   false and misleading and presented in violation of GAAP, due to improper accounting for the
16   backdate stock options. As a result, WFI's compensation expense was understated and its net
17   earnings were overstated. This form was signed by Massih, Masood, Ashwill, Anderson,
18   Carano, Jarvis, and Weller.

19       **The Fiscal 2002 Form 10-K**

20       59.    On or about March 21, 2003, the Company filed its fiscal 2002 Form 10-k with
21   the SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the
22   public. The fiscal 2002 Form 10-K included 2002 financial statements which were materially
23   false and misleading and presented in violation of GAAP, due to improper accounting for the
24   backdate stock options. As a result, WFI's compensation expense was understated and its net
25   earnings were overstated. This form was signed by Masood, Ashwill, Anderson, Carano,
26   Jarvis, Owens and Hoglund.

27
28

1

**The Fiscal 2003 Form 10-K**

2       60.     On or about March 8, 2004, the Company filed its fiscal 2003 Form 10-k with

3 the SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the

4 public. The fiscal 2003 Form 10-K included 2003 financial statements which were materially

5 false and misleading and presented in violation of GAAP, due to improper accounting for the

6 backdate stock options. As a result, WFI's compensation expense was understated and its net

7 earnings were overstated. This form was signed by Masood, DeMarco, Anderson, Carano,

8 Jarvis, Owens, and Hoglund. The fiscal 2003 Form 10-K was amended and filed on

9 September 20, 2004.

10

**The Fiscal 2004 Form 10-K**

11     61.     On or about March 31, 2005, the Company filed its fiscal 2004 Form 10-k with

12 the SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the

13 public. The fiscal 2004 Form 10-K included 2004 financial statements which were materially

14 false and misleading and presented in violation of GAAP, due to improper accounting for the

15 backdate stock options. As a result, WFI's compensation expense was understated and its net

16 earnings were overstated. This form was signed by Masood, DeMarco, Lund, Anderson,

17 Carano, Jarvis, and Hoglund.

18

**The Fiscal 2005 Form 10-K**

19     62.     On or about April 3, 2006, the Company filed its fiscal 2005 Form 10-k with

20 the SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the

21 public. The fiscal 2005 Form 10-K included 2005 financial statements which were materially

22 false and misleading and presented in violation of GAAP, due to improper accounting for the

23 backdate stock options. As a result, WFI's compensation expense was understated and its net

24 earnings were overstated. This form was signed by Masood, DeMarco, Lund, Anderson,

25 Carano, Jarvis,  Leitch and Hoglund

26

**THE TRUTH IS REVEALED**

27     63.     On March 12, 2007, the Company announced that it would delay its 2006

28 annual financial results after an internal review uncovered incorrect measurement dates for

stock option grants issues between 1998 and 2003.  The Company further disclosed that

"there is a strong likelihood" that it will restate financial results issued during this period.  The

market responded sharply to this news with the price of WFI's stock tumbling 14.8% from a

closing price of $2.10 on March 12, 2007 to an all-time low of $1.79 during after0hours

trading.  On March 13, 2007 the share price continued to decline, closing at $1.61.

### THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

64.     Unlike most companies which avoid such option backdating abuse by issuing

stock option grants at the same time each year, which eliminates the potential for backdating,

defendants ensured that executives would not have any such restrictions.  Given the many

times WFI's grants were a lows immediately prior to sharp rises, the date of their stock option

grants was more than merely coincidental.

65.     As a result of the backdating of options, defendants have been unjustly

enriched at the expense of WFI, which has received and will receive less money from

defendants when they exercise their options at prices substantially lower than they would have

if he options had not been backdated.

### TOLLING OF THE STATUTE OF LIMITATIONS

66.     The Counts alleged herein are timely.  As an initial matter, defendants

wrongfully concealed their manipulation of the stock option plans, through strategic timing

and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely

reassuring WFI's public investors that WFI's option grants were being administered by a

committee of independent directors, and by failing to disclose that backdated options were, in

fact, actually issued on dates other than those disclosed, and that strategically time option

grants were issued based on the manipulation of insider information that ensured that the true

fair market value of the Company's stock was, in fact, higher than the publicly traded price on

the date of the option grant.

67.     WFI's public investors had no reason to know of the defendants' breaches of

their fiduciary duties until March 12, 2007 when the Company announced the internal review

of its stock option grant practices.

**68.** Finally, as fiduciaries of WFI and its public shareholders, the defendants cannot rely on any limitations defense where they withheld from WFI's public shareholders the facts that give rise to the claims asserted herein, *i.e.*, that WFI had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

**COUNT I**

**Violations of §14(a) of the Exchange Act Against All Defendants**

**69.** Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

**70.** Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

**71.** The 2000-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that certain of the defendants were causing WFI to engage in an option backdating scheme, a fact that defendants were aware of and participated in from at least 2000.

**72.** In the exercise of reasonable care, defendants should have known that the Proxy Statements were materially false and misleading.

**73.** The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

74.     The Company was damaged as a result of the material misrepresentations and
omissions in the Proxy Statements.

**COUNT II**

**Accounting**

75.     Plaintiff incorporates by reference and realleges each and every allegation set
forth above, as though fully set forth herein.

76.     At all relevant times, defendants as directors and/or officers of WFI, owed the
Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

77.     In breach of their fiduciary duties owed to WFI and its shareholders, the
defendants caused, among other things, the granting of backdated stock options to themselves
and/or certain other officers and directors of WFI and/or failed to properly investigate whether
these grants had been improperly made.  By this wrongdoing, the defendants breached their
fiduciary duties owed to WFI and its shareholders.

78.     The defendants possess complete and unfettered control over the improperly
issued stock option grants and the books and records of the Company concerning the details
of such improperly backdated stock option grants to certain of the defendants.

79.     As a result of defendants' misconduct, WFI has been substantially injured and
damaged financially and is entitled to a recovery as a result thereof, including the proceeds of
those improperly granted options which have been exercised and sold.

**80.**     Plaintiff demands an accounting be made of all stock option grants made to
any of the defendants, including, without limitation, the dates of the grants, the amounts of the
grants, the value of the grants, the recipients of the grants, the exercise date of stock options
granted to any of the defendants, as well as the disposition of any proceeds received by any of
the defendants via sale or other exercise of backdated stock option grants received by those
defendants.

**COUNT III**

**Breach of Fiduciary Duty Against All Defendants**

81.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82.     Defendants owe the Company fiduciary obligations.  By reason of their fiduciary relationship, the defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty and due care.

83.     The defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

84.     Each of the defendants authorized, or by abdication of duty, permitted the stock options granted to certain defendants to be backdated.  These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

85.     As a direct and proximate result of the defendants' breaches of their fiduciary duties, the defendants have caused, and will continue to cause, the Company to suffer substantial monetary damages as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to the Company's reputation, business and good will.

86.     The Company has been directly and substantially injured by reason of the defendants' intentional breach and/or reckless disregard of their fiduciary duties to the Company.  Plaintiff, as a shareholder and representative of the Company, seeks damages and other relief for the Company, in an amount to be proven at trial.

**COUNT IV**

**Abuse of Control Against All Defendants**

87.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

88.     The defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control

25
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    over, WFI and to continue to receive substantial benefits, salaries and emolument associated

2    with their positions at WFI.  As part of this scheme, defendants actively made and/or

3    participated in the making of or aided in the making of misrepresentations regarding WFI.

4          89.    Defendants' conduct constituted an abuse of their ability to control and

5    influence WFI.

6          90.    By reason of the foregoing, WFI has been damaged.

7                                    **COUNT V**

8                    **Gross Mismanagement Against All Defendants**

9          91.    Plaintiff incorporates by reference and realleges each and every allegation set

10   forth above, as though fully set forth herein.

11         92.    Defendants had a duty to WFI and its shareholders to prudently supervise,

12   manage and control the operations, business and internal financial accounting and disclosure

13   controls of WFI.

14         93.    Defendants, by their actions and by engaging in the wrongdoing described

15   herein, abandoned and abdicated their responsibilities and duties with regard to prudently

16   managing the business of WFI in a manner consistent with the duties imposed upon them by

17   law.  By committing the misconduct alleged herein, defendants breached their duties of due

18   care, diligence and candor in the management and administration of WFI's affairs an din the

19   use and preservation of WFI's assets.

20         94.    During the course of the discharge of their duties, defendants knew or

21   recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet

22   defendants caused WFI to engage in the scheme complained of herein which they knew had

23   an unreasonable risk of damage to WFI, thus breaching their duties to the Company.  As a

24   result, defendants grossly mismanaged WFI.

25         95.    By reason of the foregoing, WFI has been damaged.

26

27

28

## COUNT IV

### Constructive Fraud Against All Defendants

96.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

97.    As corporate fiduciaries, defendants owed to WFI and its shareholders a duty of candor and full accurate disclosure regarding the true state of WFI's business and assets and their conduct with regard thereto.

98.    As a result of the conduct complained of, defendants made, or aided in the making of numerous misrepresentations to and/or concealed material facts from WFI's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of WFI.  Thus, they have committed constructive fraud and violated their duty of candor.

99.    By reason of the foregoing, WFI has been damaged.

## COUNT VII

### Corporate Waste Against All Defendants

100.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

101.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to defendants via the options backdating scheme, defendants have caused WFI to waste valuable corporate assets.

102.    As a result of the defendants' corporate waste, they are liable to the Company.

## COUNT VIII

### Unjust Enrichment Against All Defendants

103.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

1    104.    As a result of the conduct described above, defendants will be and have been

2    unjustly enriched at the expense of WFI, in the form of unjustified salaries, benefits, bonuses,

3    stock option grants and other emoluments of office.

4    105.    All the payments and benefits provided to the defendants were at the expense

5    of WFI. The Company received no benefit from these payments. WFI was damaged by such

6    payments.

7    **PRAYER FOR RELIEF**

8    WHEREFORE, plaintiff demands judgment as follows:

9    A.    Against the defendants and in favor of the Company for the amount of

10    damages sustained by the Company as a result of the defendants' breaches of fiduciary duties,

11    gross mismanagement, waste of corporate assets and unjust enrichment.

12    B.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and

13    state statutory provision sued hereunder, including attaching, impounding, imposing a

14    constructive trust on or otherwise restricting the proceeds of defendants' trading activities or

15    their other assets so as to assure that plaintiff on behalf of the Company has an effective

16    remedy;

17    C.    Awarding to the Company restitution from defendants, and each of them, and

18    ordering disgorgement of all profits, benefits and other compensation obtain by defendants as

19    a result of the conduct alleged herein;

20    D.    Granting an injunction preventing future exercise of any stock option grants by

21    any current or former Director or Officer;

22    E.    Awarding to the plaintiff the costs and disbursements of the action, including

23    reasonable attorneys' fee, accountants' and experts' fee, costs and expenses; and

24    F.    Granting such other and further relief as the Court deems just and proper.

25

26

27

28

Dated: April _12_ , 2007

Respectfully submitted,

By: _____

James C. Krause, Esq.
Vincent D. Slavens, Esq.
KRAUSE, KALFAYAN, BENINK &
SLAVENS, LLP.
625 Broadway, Suite 635
San Diego, CA 92101
Tel: 619-232-0331
Fax: 619-232-4019

Donald J. Enright, Esq.
Elizabeth K. Tripodi, Esq.
FINKELSTEIN THOMPSON LLP
1050 30th Street N.W.
Washington, DC 20007
Tel: 202-337-8000
Fax: 202-337-8090

Attorneys for Plaintiff

## WIRELESS FACILITIE, INC. VERIFICATION

I, Eamen Hameed, the undersigned, certify and declare that I have read the foregoing complaint and know its contents. I am a party to this action. The matters stated in the document described above are true to my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true. I hereby declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE: _Apr 10, 2007_

SIGNATURE

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILED**
APR 1 3 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**I (a) PLAINTIFFS**
Eamen Hameed, Derivatively and on behalf of WIRELESS FACILITIES, INC.

**DEFENDANTS**
MASSIH TAYEBI, MASOOD, TAYEBI, THOMAS MUNRO, SCOTT ANDERSON, BANDELL CARANO, WILLIAM A. HOGLUND, ANDREW M. LEITCH, DAVID LEE, SCOT JARVIS, JAMES EDWARDS, DEANNA H. LUND, TERRY ASHWILL, and WM. MORGAN
-and-
WIRELESS FACILITIES, INC., a Delaware Corporation, Nominal Defendant

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** San Diego County
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** San Diego County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
James C. Krause, Esq.
Vincent D. Slavens, Esq.
KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP
625 Broadway, Suite 635
San Diego, CA 92101
Tel: (619) 232-0331
Fax: (619) 232-4019

**ATTORNEYS (IF KNOWN)**

'07 CV 0680 BTM (RBB)

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
(For Diversity Cases Only) **FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)**

Plaintiff brings this shareholder derivative action against the Board of Directors and certain senior executives of Wireless Facilities, Inc. seeking to remedy defendants' violation of Section 14(a) of the Exchange Act, breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement.

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (13958) | ☒ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| | | | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | | |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

**DEMAND $**

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**
JUDGE Hon. Barry Ted Moskowitz, Presiding
Hon. M. James Lorenz, Presiding
Docket Number 07-cv-00482-BTM-NLS
07-cv-00626-L-AJB

**DATE** April 13, 2007

**SIGNATURE OF ATTORNEY OF RECORD**

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

137120  Rec 4/16/07  $350

UNITED STATES
DISTRICT COURT
Southern District of California
San Diego Division

# 137120 - A2
April 16, 2007

| Code | Case # | Qty | Amount |
|------|--------|-----|--------|
| CV086900 | 3-07-CV-0680 | | 60.00 CH |
| Judge | - MOSKOWITZ | | |
| CV086400 | | | 100.00 CH |
| CV510000 | | | 190.00 CH |

Total-> 350.00

FROM: CIVIL FILING
HAMEED V. TAYEBI ET AL
HCM 1004
SH